# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | | |
|---|---|---|
| JANE DOE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:20-cv-00125 |
| | ) | |
| NEW ASPEN MANAGEMENT LLC | ) | |
| d/b/a GVA Management TN, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

After being sexually assaulted at her workplace, Plaintiff Jane Doe[1] ("Doe") brought this action against Defendant New Aspen Management LLC d/b/a GVA Management TN ("New Aspen"), asserting various harassment, discrimination, and retaliation claims under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, and their corresponding Tennessee statutes, see T.C.A. § 4-21-101 *et seq.*; T.C.A. § 8-50-103 *et seq.*

Pending now before the Court is New Aspen's Motion for Summary Judgment (Doc. No. 52). Doe filed a response (Doc. 61), and New Aspen filed a reply (Doc. No. 64). For the following reasons, New Aspen's motion will be granted in part and denied in part. The Court will dismiss Doe's claims for retaliation under the Tennessee Human Rights Act ("THRA") (Count IV); disability discrimination under the Tennessee Disability Act ("TDA") (Count V); intentional infliction of emotional distress ("IIED") (Count VI); negligent infliction of emotional distress

---

[1]    The Court will refer to Plaintiff by the pseudonym, "Jane Doe," pursuant to the March 27, 2020 Agreed Protective Order. (See Doc. No. 13).

("NIED") (Count VII); retaliation under Title VII (Count IX); and retaliation under the ADA (Count X). All other claims will proceed to trial.

## I. FACTUAL OVERVIEW[2]

Doe worked as a Community Manager at New Aspen's residential property in Madison, Tennessee, an area with a significant amount of violent crime. (Doc. No. 62 ¶¶ 1, 8). In January 2019, New Aspen learned that several crimes allegedly occurred at the property, including the sexual assault of a resident and a drive-by shooting. (Id. ¶¶ 10–11).

As part of her employment, Doe "walked units," which consisted of visiting residential units to collect overdue rent, determine whether a unit was vacant, and ascertain a unit's maintenance status. (Id. ¶ 2). On February 12, 2019, at least one unknown, third-party assailant assaulted and raped Doe while she was walking units. (Id. ¶ 3). After the incident, she was taken to the hospital where her supervisor, Diana English, took pictures of her injuries and notified corporate officials. (Doc. No. 65 ¶ 15). English, who was Regional Property Supervisor for New Aspen, sent photos to at least one employee; however, the parties dispute why she did so. (Id. ¶ 21). Doe did not disclose to New Aspen that she was raped until approximately a month and a half after the incident, but English suspected something serious had occurred. (Doc. No. 62 ¶ 4).

Doe returned to work within two days of the assault, at which point Defendant provided an armed security guard to accompany her while walking units. (Id. ¶ 6). The parties dispute why Doe returned so quickly; Doe claimed Defendant never informed her she could take additional time off, while New Aspen claims she wanted to return on that date. (Id.; see also Doc. No. 65 ¶¶ 16, 18).

---

[2]    The Court draws the undisputed facts of this case from the parties' Summary Judgment briefings (Doc. Nos. 52, 53, 61, 64) along with the parties' responses to the Statements of Fact filed contemporaneously with those briefings (Doc. Nos. 62, 65).

Following the sexual assault, Doe was diagnosed with post-traumatic stress disorder ("PTSD") and depression, conditions with which she had been diagnosed earlier. (Id. ¶ 21; see also Doc. No. 65 ¶ 38). New Aspen helped Doe obtain mental health treatment. (Doc. No. 62 ¶ 8; see also Doc. No. 65 ¶ 23).

One week after the incident, Doe received an envelope at work containing a bullet casing and the necklace she wore on the day she was assaulted. (Doc. No. 65 ¶ 20). Plaintiff notified English and the police about the threat. (Id. ¶ 20). Shortly thereafter, Doe requested that she no longer be required to walk units. (Doc. No. 62 ¶ 10; see also Doc. No. 65 ¶ 22). The parties dispute whether she was still required to do so, but Doe's treating physician opines that Doe could choose whether she did so. (Doc. No. 62 ¶¶ 8, 20; see also Doc. No. 65 ¶ 22).

Doe claims that New Aspen continuously forced her to relive her trauma and that New Aspen, including English, harassed her following her return to work. (Id. ¶ 19). She specifically claims that English doubted whether she was raped and repeatedly questioned her and other co-workers why she did not fight back or scream loudly during the incident. (Doc. No. 65 ¶ 26). New Aspen disputes Doe's characterization of English's remarks. (Id. ¶¶ 26–28).

Doe eventually requested that she be transferred to another work location. (Doc. No. 62 ¶ 11). On May 28, 2019, she began work at New Aspen's location in Clarksville, TN as an Assistant Community Manager. (Id. ¶ 13). The parties dispute whether this transfer constituted a demotion or maintained her prior terms of employment. (Id. ¶¶ 12–13; see also Doc. No. 65 ¶ 31). Doe claims, and New Aspen disputes, whether Doe was required to walk units at the Clarksville location. (Doc. No. 65 ¶ 34). Doe worked at the Clarksville location until February 2020. (Doc. No. 62 ¶ 16).

3

## II. LEGAL STANDARD

Summary judgment is appropriate only where there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A genuine dispute of material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Griffith v. Franklin Cty., 975 F.3d 554, 566 (6th Cir. 2020) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). "The party bringing the summary judgment motion has the initial burden of informing the Court of the basis for its motion and identifying portions of the record that demonstrate the absence of a genuine dispute over material facts." Rodgers v. Banks, 344 F.3d 587, 595 (6th Cir. 2003) (citation omitted). "The moving party may satisfy this burden by presenting affirmative evidence that negates an element of the non-moving party's claim or by demonstrating an absence of evidence to support the non-moving party's case." Id. (citation and internal quotation marks omitted).

In deciding a motion for summary judgment, the Court must review all the evidence, facts, and inferences in the light most favorable to the party opposing the motion. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citation omitted). The Court does not, however, weigh the evidence, judge the credibility of witnesses, or determine the truth of the matter. Anderson, 477 U.S. at 249. The mere existence of a scintilla of evidence in support of the non-moving party's position will be insufficient to survive summary judgment; rather, there must be evidence on which a trier of fact could reasonably find for the non-moving party. Rodgers, 344 F.3d at 595.

4

## III. ANALYSIS

New Aspen seeks summary judgment on Doe's eight[3] remaining claims: (1) sex harassment under the Tennessee Human Rights Act ("THRA"), T.C.A. § 4-21-101 *et seq.* (Count III); (2) retaliation under the THRA (Count IV); (3) disability discrimination under the Tennessee Disability Act ("TDA"), T.C.A. § 8-50-103 *et seq.* (Count V); (4) intentional infliction of emotion distress ("IIED") (Count VI); (5) negligent infliction of emotional distress ("NIED") (Count VII); (6) sex harassment under Title VII (Count VIII); (7) retaliation under Title VII (Count IX); and (8) disability discrimination and retaliation under the ADA (Count X). (See Doc. Nos 30, 33). The Court will discuss each claim.

   A.  Sex Harassment (Counts III and VIII)

The Court will analyze Doe's sex harassment claims under Title VII simultaneous to her THRA claims because the standards are identical. See Bailey v. USF Holland, Inc., 526 F.3d 880, 885 n.1 (6th Cir. 2008); see also Morgan v. Triumph Aerostructures, LLC, 296 F. Supp. 3d 911, 920 (M.D. Tenn. 2017); Ferguson v. Middle Tenn. State Univ., 451 S.W.3d 375, 381 (Tenn. 2014); Marpaka v. Hefner, 289 S.W.3d 308, 313 (Tenn. Ct. App. 2008).

Title VII, along with the THRA, prohibits employment discrimination "because of . . . sex." 42 U.S.C. § 2000e-2(a)(1); see also T.C.A. § 4-21-101(a)(1). These prohibitions also apply to sexual harassment and a hostile work environment. See Bailey, 526 F.3d at 885 n.1. "Sexual harassment in the workplace constitutes discrimination in violation of [Title VII] '[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" Nathan v. Great Lakes Water Auth., 992 F.3d 557, 564–65 (6th Cir. 2021)

---

[3]     On September 25, 2020, the Court dismissed Doe's claims for Negligence (Counts I) and Common Law Assault and Battery (Count II). (Doc. No. 30).

(citing <u>Oncale v. Sundowner Offshore Servs.</u>, 523 U.S. 75, 78 (1998)); <u>see also</u> <u>Meritor Sav. Bank,</u> <u>FSB v. Vinson</u>, 477 U.S. 57, 65 (1986).

The Sixth Circuit employs a five-element test for sexual harassment claims and examines whether: "(1) [the plaintiff] belonged to a protected group, (2) she was subject to unwelcome harassment, (3) the harassment was based on [sex], (4) the harassment was sufficiently severe or pervasive to alter the conditions of employment and create an abusive working environment, and (5) the defendant knew or should have known about the harassment and failed to act." <u>Nathan</u>, 992 F.3d at 565 (citing <u>Waldo v. Consumers Energy Co.</u>, 726 F.3d 802, 813 (6th Cir. 2013)).

Doe's sexual harassment claims rely on two events that New Aspen disputes. First, she claims that New Aspen is liable for the February 12, 2019 sexual assault under the THRA.[4] (Doc. No. 61 at 14). Second, Doe argues that New Aspen is liable under both Title VII and the THRA for "the ongoing campaign of maltreatment by management and co-workers because of the sexual assault." (<u>Id.</u>).

1. The Sexual Assault

New Aspen challenges whether a sexual assault by an unknown third party, which the employer could not have foreseen, gives rise to employer liability for sexual harassment under the THRA. (<u>See</u> Doc. No. 64 at 2–3).

The Sixth Circuit has "held that a single act may give rise to a hostile work environment" if it is severe or extreme in nature. <u>Ault v. Oberlin Coll.</u>, 620 F. App'x 395, 402 (6th Cir. 2015) (supervisor shoved employee against shelves in a walk-in cooler, rubbed his genitals against her, and held her in place despite demands that he stop); <u>see also</u> <u>Hickman v. Laskodi</u>, 45 F. App'x

---

[4]     New Aspen correctly argues, and Doe concedes, that Doe failed to preserve the February 12, 2019 sexual assault under Title VII because she failed to file her EEOC charge until February 7, 2020. (<u>See</u> Doc. No. 53 at 17; <u>see also</u> Doc. No. 61 at 14 n.4).

6

451, 456 (6th Cir. 2002). Rape is an example of such a severe and extreme act. See Kalich v. AT&T Mobility, LLC, 679 F.3d 464, 474 (6th Cir. 2012) ("Except in the case of extreme incidents such as rape or sexual assault, a single, isolated event is typically insufficient to create a hostile work environment.").

However, for an employer to be liable, even for instances of extreme conduct, it must have known or should have known "about the harassment and failed to" respond. Nathan, 992 F.3d at 565; see also Blankenship v. Parke Care Ctrs. Inc., 123 F.3d 868, 873 (6th Cir. 1997) (finding that an employer may be held liable if its "response manifests indifference or unreasonableness in light of the facts the employer knew or should have known").[5] Relying on this body of law, Doe argues that New Aspen knew or should have known about the impending assault because it "had knowledge that violent crime, including sexual assault, took place at and around the . . . property and that Doe had recently been threatened in front of English by a resident." (Doc. No. 53 at 17; see also Doc. No. 61 at 17).

The parties do not point to – nor can the Court locate – any Sixth Circuit case law specifically addressing when liability attaches to employers for *third party* sexual harassment. See Smith v. Gallia Cty. Jail, No. 2:20-cv-3089, 2021 WL 2712218, at *4 n.1 (S.D. Ohio July 1, 2021) (noting that the "Sixth Circuit has not yet addressed" this issue of "whether employers may be liable under Title VII when third parties create a hostile work environment"). However, at least one district court has found that Title VII could cover third party harassment when an employer

---

[5]     It is worth noting that in Jesse v. Savings Prods., the Tennessee Supreme Court found that a convenience store clerk was entitled to workers' compensation benefits for injuries sustained from a third-party assault on the employer's premises. 772 S.W.2d 425, 427 (Tenn. 1989). The Court found that "the Plaintiff's indiscriminate exposure to the general public is one of the conditions under which her work was required to be performed, and the actions on the premises are reasonably considered hazards of the employment." Id.

"knew about the harassment and failed to take prompt action." Parker v. Nat'l Assoc. of Letter Carriers, AFL-CIO, No. 19-12915, 2020 WL 3121175, at *5 (E.D. Mich. June 12, 2020).

At least four circuit courts have adopted similar analyses to conduct on an employer's premises by non-employees. See Beckford v. Dep't of Corr., 605 F.3d 951, 957–58 (11th Cir. 2020) (stating that "employers may be held liable [under Title VII] for failing to remedy the harassment of [its] employees by third-parties who create a hostile work environment"); Freeman v. Dal-Tile Corp., 750 F.3d 413, 423 (4th Cir. 2014) (noting that an "employer is liable under Title VII for third parties creating a hostile work environment if the employer knew or should have known of the harassment and failed to take prompt remedial action reasonably calculated to end the harassment"); Galdamez v. Potter, 415 F.3d 1015, 1022 (9th Cir. 2005) ("An employer may be held liable for the actionable third-party harassment of its employees where it ratifies or condones the conduct by failing to investigate and remedy it after learning of it."); Crist v. Focus Homes, Inc., 122 F.3d 1107, 1111–12 (8th Cir. 1997) (finding that an employer may be liable for a hostile work environment created by a third party where the employer "clearly controlled the environment," and "had the ability to alter those conditions to a substantial degree").

After reviewing the record in the light most favorable to Doe, the Court finds that Doe has produced sufficient admissible evidence from which a reasonable juror could conclude that New Aspen knew or should have known about the possibility of an assault. It is undisputed that New Aspen's property was located in an area prone to violent crime. (Doc. No. 62 ¶¶ 1, 8). It is also undisputed that in January 2019, a month before Doe's assault, New Aspen learned that several crimes occurred at the property, including the sexual assault of a resident. (Id. at ¶¶ 10–11). The record also further establishes that part of Doe's job responsibilities included evicting residents for sexually violent behavior. (See Doe Dep., Doc. No. 54-1 at 20:21–24; 26:8–13; 28:2–5; see also

8

English Dep. 54-2 at 33:3–34:9). Finally, New Aspen's own harassment policy prohibited sexual assault even by "a non-team member," which reflects New Aspen's prior knowledge that its tenants, or other third parties, may engage in sexually harassing or assaultive behavior toward its employees. (Doc. No. 63-1 at 10). This evidence, if believed, at least creates a genuine dispute of material fact as to what New Aspen knew or should have known regarding the potential for violence against Doe on its property. See Nathan, 992 F.3d at 565; Parker, No. 19-12915, 2020 WL 3121175, at *5.

Accordingly, New Aspen is not entitled to summary judgment on Doe's claim for sex harassment under the THRA based upon the sexual assault.

2. Hostile Work Environment Following the Sexual Assault

Doe next argues that New Aspen subjected her to sexual harassment following her sexual assault when: (1) English told her that she should have fought harder or screamed louder during the sexual assault; (2) English had discussions with co-workers about counseling and care Doe was receiving; (3) English shared pictures of Doe taken at the hospital with co-workers; (4) English told her to "let it go" regarding her complaints about sexually harassing conduct; (5) New Aspen required her to walk units after her assault; (6) New Aspen required her to visit the same unit where she was sexually assaulted; and (7) New Aspen required her to return to work only a couple of days after her assault without additional time off. (See Doc. No. 61 at 19).

"Depending upon whether the alleged harasser is a co-worker or a supervisor of the victim, there are slightly different standards for evaluating whether the employer is vicariously liable for the hostile work environment." Clark v. UPS, 400 F.3d 341, 348 (6th Cir. 2005). Because English was Doe's supervisor "with immediate (or successively higher) authority over the employee," New Aspen is "vicariously liable for an actionable hostile work environment." Id. (citing Jackson v.

9

<u>Quanex Corp.</u>, 191 F.3d 647, 663 (6th Cir. 1999); (<u>see also</u> English Dep., Doc. No. 63-2 at 14) (Doe, as a community manager, reported directly to English, the Regional Property Supervisor).

Supervisor hostile work environment claims impose strict liability on the employer. <u>Clark</u>, 400 F.3d at 348; <u>see also</u> <u>Theus v. Glaxosmithkline</u>, 452 F. App'x 596, 601 (6th Cir. 2011) ("An employer will automatically be liable for sexual harassment by supervisors."). Employers can avoid liability when "the harassment did not result in a negative tangible employment action for the victim." <u>Clark</u>, 400 F.3d at 348. Otherwise, the employer is liable unless it proves "by a preponderance of the evidence that (a) 'the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise.'" <u>Id.</u> (citing <u>Faragher v. City of Boca Raton</u>, 524 U.S. 775, 807–08 (1998)). "The employer will lose this defense if it fails either prong." <u>Id.</u>

There is ample evidence in the record to support Doe's sexually hostile work environment claim following the sexual assault. Doe complained to Kara Garst, President of Operations at New Aspen; Kathy Bazicki, Vice President of Operations and English's direct supervisor; and Scott Frazier, New Aspen's lead chaplain, regarding English's actions and comments about Doe's sexual assault. (Doc. No. 63-1 at 48, 52–53, 54, 74; <u>see also</u> Doc. No. 63-3 at 20, 42–44). Doe complained about English's behavior directly to Garst when she told her "that [she] had a lot of stuff that [she] wanted to let her know but [she] was afraid that [she] was going to lose [her] job." (Doc. No. 63-1 at 52). Garst recalled Doe's complaints. (Doc. No. 63-3 at 42–44). Doe also told Frazier about English's harassment. (Doc. No. 63-1 at 48, 53, 74). Frazier explained that he did not report the harassment because he felt it was management's duty to do so. (Frazier Dep., Doc. No. 63-7 at

50). And Frazier had no knowledge that anyone was disciplined for "criticizing [Doe based on] how she was handling things at work after the assault." (Id. at 51).

Moreover, Doe's co-worker at the Madison location, Amanda Stillwell, explained that New Aspen had a "culture of gossip" and that English spoke with her "several times" about Doe's assault and rape. (Doc. No. 63-4 at 18, 36, 41). Stillwell also admitted that English "told stuff that she probably shouldn't have told and shared." (Id. at 42). According to Stillwell, English questioned why no one heard anything on the day of Doe's sexual assault as well as why Doe would not get a rape kit following the assault. (Id. at 36, 53). This evidence undercuts whether New Aspen exercised the appropriate "reasonable care" in promptly remediating harassing conduct. Summary judgment is not appropriate because whether New Aspen exercised reasonable care "is a question for a factfinder." Clark, 400 F.3d at 351 (citation omitted).

Doe has also established a genuine dispute of material fact as to whether the alleged harassment was sufficiently severe or pervasive. "In determining whether the harassment was sufficiently severe or pervasive, a court must consider the totality of the circumstances." Arnold v. Reliant Bank, 932 F. Supp. 2d 840, 853 (M.D. Tenn. 2013) (citing Randolph v. Ohio Dep't of Youth Servs., 453 F.3d 724, 733 (6th Cir. 2006)). This requires both an objective and a subjective analysis. Nathan, 992 F.3d at 567–68; see also Doe v. Matthew 25, Inc., 322 F. Sup. 3d 843, 856 (M.D. Tenn. 2017). "To determine whether a work environment was objectively hostile, courts must consider 'all the circumstances[]' from the perspective of 'a reasonable person in the plaintiff's position.'" Nathan, 992 F.3d at 568 (citing Harris v. Forklift Sys., Inc., 510 U.S. 17, 23 (1993)). Courts consider a number of factors in analyzing the objective prong, including: "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an

11

employee's work performance." Harris, 510 U.S. at 23. The subjective prong requires that the plaintiff put forth evidence that he or she was personally offended by the harassing conduct. Nathan, 992 F.3d at 567–68.

Doe found English's conduct subjectively offensive and, from an objective viewpoint, the conduct is offensive. Doe found the workplace discussions and sharing of images to be frustrating. (See Doc. No. 63-1 at 48). According to Doe, English's behavior extended over a several month period. (Id. at 54). Moreover, Dr. Cynthia Lucas, Doe's treating clinical psychologist, testified that English's conduct could have a "triggering" effect and "kept ripping the Band-Aid off." (Lucas Dep., Doc. No. 63-8 at 29–32; see also id. at 69–74). Doe also testified that, following the assault, English told her that she "needed to get back to work because she had other things to do as well." (Doc. No. 63-1 at 37). A reasonable juror could conclude that this evidence, taken in totality, establishes a humiliating pattern of conduct based upon Doe's gender. Harris, 510 U.S. at 23; see also Williams v. GMC, 187 F.3d 553, 562 (6th Cir. 1999) (finding that courts must view allegedly harassing conduct in context to determine whether they are objectively hostile).

The Court concludes, as a matter of law, that the totality of English's actions and remarks as well as New Aspen's actions toward Doe are sufficient for Doe to proceed to trial. New Aspen's arguments that the alleged harassment is (1) "too tenuous" over an eleven-month period, and (2) constitutes nothing more than "gossip," (Doc. No. 53 at 13), miss the legal import of this evidence. English was a management employee. New Aspen was obligated under its own policy as well as both state and federal law to avoid creation of a sexually hostile work environment. If the jury accepts this evidence as true, it would show that New Aspen shirked its legal duty.

Doe's claim, under Title VII and the THRA, for a hostile work environment based on a campaign of maltreatment following the assault will proceed to trial.

12

B.  Retaliation Under the THRA and Title VII (Counts IV and IX)

Doe relies upon circumstantial evidence to prove her retaliation claims, triggering the oft-cited burden shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Under that framework, Doe must first establish a prima facie case of retaliation; the burden then shifts to New Aspen to articulate a legitimate, nonretaliatory reason for its actions; and then Doe must prove that New Aspen's reasons were a pretext for its retaliation. See Rogers v. Henry Ford Health Sys., 897 F.3d 763, 772 (6th Cir. 2018) (describing the burden-shifting framework); Upshaw v. Ford Motor Co., 576 F.3d 576, 584 (6th Cir. 2009) (same).

To make a prima facie Title VII retaliation case, an employee must prove that "(1) [s]he engaged in protected activity, (2) the employer knew of the exercise of the protected right, (3) the defendant took an action that was 'materially adverse' to the plaintiff, and (4) there was a causal connection between the protected activity and the adverse employment action." Laughlin v. City of Cleveland, 633 F. App'x 312, 315 (6th Cir. 2015). "To prove causation . . . a plaintiff must show that the employee's activity was a 'but for' cause of the employer's adverse action against her, meaning the adverse action would not have occurred absent the employer's desire to retaliate." George v. Youngstown State Univ., 966 F.3d 446, 459 (6th Cir. 2020) (citing Univ. of Tex. Sw. Med. Ctr. v. Nassar, 570 U.S. 338, 352, 360 (2013)).

The record establishes that Doe satisfies the first, second, and fourth prongs of a prima facie retaliation case. (See Doc. No. 63-1 at 48–49, 52–54, 66–67, 72, 82; see also Doc. No. 63-3 at 67, 71, 73). New Aspen contends that Doe fails to establish the third prong because she cannot show that her reassignment constituted a materially adverse action. (Doc. No. 53 at 16). The "materially adverse action" element of a Title VII retaliation claim requires a plaintiff to show "that a reasonable employee would have found the challenged action materially adverse, which in

13

this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Burlington Northern and Santa Fe Ry. Co. v. White, 548 U.S. 53, 57, 59 (2006)); see also Rogers, 897 F.3d at 775–76 (noting that, post Burlington Northern, a plaintiff is "not limited to discriminatory actions that affect the terms and conditions of employment"; rather, whether a "reasonable employee would have found the challenged action materially adverse" is sufficient).

After Burlington Northern, a transfer may be adverse in instances where it is "accompanied by a change in salary, benefits, title, or work hours, 'significantly diminished material responsibilities, or other indices that might be unique to a particular situation.'" Ellison, 2019 WL 280982, at *5 (citing Arnold v. City of Columbus, 515 F. App'x 524, 532 (6th Cir. 2013)); see also Mitchell v. Vanderbilt Univ., 389 F.3d 177, 182–83 (6th Cir. 2004). Here, the record, viewed in the light most favorable to Doe, establishes that Doe's transfer could constitute a materially adverse employment action. Doe's pay changed from salaried to hourly, a less desirable status. (See Doc. No. 63-1 at 40–42). As part of her new pay structure, Doe also lost the opportunity to earn commissions. (Id.). Moreover, Doe's title changed from "Community Manager" to "Assistant Community Manager," and as a result, she was no longer allowed to attend management meetings. (Id. at 63). These changes are yet another demeaning impact of her transfer, are more than a mere inconvenience, and "might well dissuade[] a reasonable worker from making or supporting a charge of discrimination." Burlington Northern, 548 U.S. at 68. Doe has established a prima facie case for retaliation.

The burden next shifts to New Aspen to identify "a legitimate, non-retaliatory reason for the employment action." Michael v. Caterpillar Fin. Servs. Corp., 496 F.3d 584, 596 (6th Cir. 2007). New Aspen's burden at this stage is one of production, not of persuasion, and it is not

particularly onerous. See Terry v. Gallegos, 926 F. Supp. 679, 692 (W.D. Tenn. 1996). Here, New Aspen says it transferred Doe at her request, not to retaliate, and that it created a new position in Clarksville just for her. (Doc. No. 63-2 at 66–67; see also Doc. Nos. 53-20; 54-21; 53 at 7). English explained that "[w]hen Doe told [her] that she could no longer work" at the Madison location, she told Doe that "you no longer have to come back to this property. That stops now. And you can just work from home until we make way for the new position." (Doc. No. 63-2 at 68). This evidence is enough to satisfy New Aspen's low burden at this stage.

The burden reverts to Doe to offer admissible "evidence sufficient that a reasonable finder of fact could reject the employer's proffered reason." Michael, 496 F.3d at 597 (quoting Haughton v. Orchid Automation, 206 F. App'x 524, 531 (6th Cir. 2006)). Doe "can demonstrate pretext by showing that the proffered reason (1) has no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was insufficient to warrant the challenged conduct." Hopson v. DaimlerChrysler Corp., 306 F.3d 427, 434 (6th Cir. 2002).

Here, Doe has not put forth admissible evidence of pretext. She did not object to her transfer to Clarksville. Indeed, it is undisputed that Doe requested a transfer. (Doc. No. 62 ¶ 11). There is no record evidence that New Aspen transferred Doe for any reason other than to accommodate her request. In short, on this record, New Aspen's reason to transfer her has a factual basis, did actually motivate the transfer, and was sufficient to warrant the transfer. See id.; see also Kenney v. Aspen Techs., Inc., 965 F.3d 443, 451 (6th Cir. 2020) (finding that plaintiff could not establish pretext because she "has not produced evidence" that the employer's rationale "has no basis in fact, did not actually motivate the adverse action, or was insufficient to motivate the adverse action") (internal citations and quotations omitted).

Accordingly, New Aspen is entitled to summary judgment on Doe's retaliation claims

under Title VII and the THRA.

    C.   <u>Disability Discrimination and Retaliation Under the ADA and TDA (Counts V and X)</u>

       1.   Disability Discrimination

Doe's reliance on the TDA for her failure to accommodate claim is misplaced. The TDA does "not include a 'reasonable accommodation component.'" <u>EEOC v. Dolgencorp, LLC</u>, 196 F. Supp. 3d 783, 800 (E.D. Tenn. 2016) (citing <u>Bennett v. Nissan N. Am., Inc.</u>, 315 S.W. 3d 832, 841–42 (Tenn. Ct. App. 2009)); <u>see also</u> <u>Jones v. Sharp Elecs. Corp.</u>, No. W2013-01817-COA-R3CV, 2014 WL 806131, at *3 (Tenn. Ct. App. Feb. 28, 2014) ("Unlike its federal counterpart, the Americans with Disabilities Act . . . , the TDA does not impose a duty on employers to make reasonable accommodations to accommodate a disabled employee."). Therefore, for TDA claims, "courts will not find that an employer discriminated against its employee if the employee's disability prevented or impaired him or her from performing the job's duties." <u>Dolgencorp</u>, 196 F. Supp. 3d at 800 (citation omitted). Here, Doe sought a reasonable accommodation to avoid walking units, and it is clear doing so was an essential job function. (<u>See</u> Doc. No. 63-2 at 73; <u>see also</u> Doc. No. 62 ¶ 2). Accordingly, New Aspen is entitled to summary judgment on Doe's claim under the TDA.

The ADA prohibits an employer from discriminating "against an individual on the basis of a disability." 42 U.S.C. § 12112(a). Failure to accommodate an employee's disability can constitute discrimination under the ADA. <u>See</u> <u>Id.</u> § 12112(b)(5)(A) (defining "discriminate" as including "not making reasonable accommodation to the known physical or mental limitations of an otherwise qualified individual with a disability"). "To establish a prima facie failure-to-accommodate claim, [the employee] must show that (1) she was disabled within the meaning of the ADA; (2) she was otherwise qualified for her position, with or without reasonable

accommodation; (3) [the employer] knew or had reason to know about her disability; (4) she requested an accommodation; and (5) [the employer] failed to provide the necessary accommodation." Brumley v. UPS, 909 F.3d 834, 839 (6th Cir. 2018); see also Deister v. Auto Club Ins. Ass'n, 647 F. App'x 652, 657 (6th Cir. 2016).

The ADA also requires that employers "engage in the interactive process with a disabled employee" and communicate in good faith regarding "possible accommodations." Keith v. Cty. Of Oakland, 703 F.3d 918, 929 (6th Cir. 2013) (quoting Kleiber v. Honda of Am. Mfg., 485 F.3d 862, 871 (6th Cir. 2007)). In the Sixth Circuit, an employer's failure to engage in the interactive process "is a violation of the ADA only if the plaintiff establishes a prima facie case of failure to accommodate." Thompson v. Fresh Prods., LLC, 985 F.3d 509, 525 (6th Cir. 2021); see also Rorrer v. City of Stow, 743 F.3d 1025, 1041 (6th Cir. 2014).

Doe has satisfied her duty to present admissible evidence to withstand summary judgment on her disability discrimination claim. Here, the first three elements of a prima facie failure to accommodate claim are not disputed. (See Doc. Nos. 61, 64). Regarding the fourth element, Doe requested to no longer walk units and to take additional time off work for mental health treatment. (See Doc. No. 63-1 at 38; see also Doc. Nos. 63-2 at 68; 63-5 ¶¶ 12–13). Regarding the fifth element, Doe testified that New Aspen did not make "an accommodation for [her] to not have to walk units by [herself] knowing that [she] couldn't do it." (Doc. No. 63-1 at 38). Moreover, Doe's co-worker, Nickie Towery, confirmed that Doe was required to walk units following her transfer and that Doe "felt betrayed by her supervisors and their requirement that she continue to walk units despite her continued fear." (Doc. No. 63-5 ¶¶ 12–13). This evidence is sufficient to establish a prima facie failure to accommodate claim.

Doe has also presented admissible evidence that New Aspen failed to engage in the

interactive process. Elaine Cotton, New Aspen's interim Human Resources Director, testified that she did not recall engaging in such a process "to determine what accommodations [Doe] needed after she was assaulted." (Cotton Dep., Doc. No. 63-6 at 7–8, 48). Cotton also testified that she was not involved in any conversations regarding Doe's requests to not walk units or take time off as needed because of her mental health issues stemming from the assault. (Id. at 53).

Based on the summary judgment record, a reasonable juror could determine that New Aspen failed to accommodate Doe and that they failed to engage in an interactive process regarding her requests. Accordingly, New Aspen is not entitled to summary judgment on Doe's ADA discrimination claims.

### 2. Retaliation

Doe claims retaliation when she was transferred to Clarksville after making her accommodation requests to not walk units and take time off work for mental health treatment. (Doc. No. 61 at 24–25). The same burden-shifting analysis discussed above applies. See Nguyen v. City of Cleveland, 229 F.3d 559, 563 (6th Cir. 2000); see also Wilbanks v. Ypsilanti Cmty. Schs, 742 F. App'x 84, 87 (6th Cir. 2018).

The Court need not repeat its earlier analysis here because the parties' arguments are the same at each stage. (See Doc. No. 61 at 24–25; see also Doc. Nos. 53 at 17; 64 at 4–5). For the reasons discussed above, although Doe can establish a prima facie claim for retaliation, she cannot show that New Aspen's rationale for transferring her was pretextual. Accordingly, New Aspen is entitled to summary judgment on Doe's retaliation claims under the ADA.

### D. Intentional or Negligent Infliction of Emotional Distress (Counts VI and VII)

Doe also brings claims for IIED and NIED. To establish a claim for IIED, Doe must show that: "the defendant's conduct was (1) intentional or reckless, (2) so outrageous that it is not

tolerated by civilized society, and (3) resulted in serious mental injury to the plaintiff." <u>Fisher v. Nissan N. Am., Inc.</u>, 951 F.3d 409, 423 (6th Cir. 2020) (citing <u>Rogers v. Louisville Land Co.</u>, 367 S.W.3d 196, 205 (Tenn. 2012)). The bar to prove such outrageous conduct is extremely high. "To say that Tennessee courts narrowly define 'outrageous conduct' would be something of an understatement." <u>Finley v. Kelly</u>, 384 F. Supp. 3d 898, 911–12 (M.D. Tenn. 2019).

Indeed, the standard for IIED is so stringent that it is insufficient even where "a defendant has acted with an intent which is tortious or even criminal, or that he intended to inflict emotional distress. A plaintiff must in addition show that the defendant's conduct was so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency and to be regarded as atrocious, and utterly intolerable in a civilized community." <u>Finley</u>, 384 F. Supp. 3d at 912 (citing <u>Lourcey v. Estate of Scarlett</u>, 146 S.W.3d 48, 52 (Tenn. 2004)); <u>see also</u> <u>Cossairt v. Jarrett Builders, Inc.</u>, 292 F. Supp. 3d 779, 789 (M.D. Tenn. 2018) (noting that "cases finding conduct sufficient to support an intentional infliction of emotional distress claim are few and far between"). Moreover, "Tennessee courts have cautioned that discrimination 'does not automatically give rise to the imposition of liability for intentional infliction of emotional distress.'" <u>Fisher</u>, 951 F.3d at 423 (citing <u>Arnett v. Domino's Pizza I, LLC</u>, 234 S.W.3d 529, 540 (Tenn. Ct. App. 2003)).

Here, Doe simply cannot meet the high bar for IIED claims. Doe argues that New Aspen acted recklessly and outrageously by "disregard[ing] the severity of [her] PTSD and depression symptoms: including flashbacks, poor sleep, avoidance of sleep, avoidance of activities outside the home, and hypervigilance, which require medical intervention." (Doc. No. 61 at 22). Doe further argues that, because a reasonable jury could find these symptoms to be severe, summary judgment as to her IIED claim "is not warranted." (Doc. No. 61 at 22). But these arguments are

misplaced and fall far short of the standard for IIED claims. The record, even in the light most favorable to Doe, does not establish that anything New Aspen did went "beyond all possible bounds of decency." <u>Finley</u>, 384 F. Supp. 3d at 912.

Doe's arguments are similarly unsuccessful regarding her NIED claim. "In Tennessee, [negligent infliction of emotional distress] requires that the plaintiff establish the elements of a general negligence claim: (1) duty, (2) breach of duty, (3) injury or loss, (4) causation in fact, and (5) proximate causation." <u>Finley</u>, 384 F. Supp. 3d at 915 (citing <u>Lourcey</u>, 146 S.W.3d at 52). For NIED claims, the plaintiff must also "'prove that the conduct giving rise to [her] claim was so extreme and outrageous that it would have caused a reasonable person to suffer serious or severe emotional injury.'" <u>Finley</u>, 384 F. Supp. 3d at 915–16 (quoting <u>Brown v. Mapco Exp., Inc.</u>, 393 S.W.3d 696, 706 (Tenn. Ct. App. 2012)). But where conduct does not rise to the level required for severity or outrageousness in IIED claims, it similarly fails for NIED claims. <u>See</u> <u>Finley</u>, 384 F. Supp. 3d at 916 (finding that "[f]or reasons already stated in relation to the intentional infliction of emotional distress claims, the conduct about which Plaintiffs complain does not rise to" the level of outrageousness required for an NIED claim). Similarly, here, because Doe cannot establish that New Aspen's conduct constituted severe or outrageous conduct for purposes of an IIED claim, she likewise cannot do so for an NIED claim.

Accordingly, the Court finds that New Aspen is entitled to summary judgment on Doe's claims for IIED and NIED.

## IV. CONCLUSION

For the foregoing reasons, New Aspen's Motion for Summary Judgment will be granted in part and denied in part. The Court will dismiss Doe's claims for retaliation under the THRA (Count IV); disability discrimination under the TDA (Count V); IIED (Count VI); NIED (Count VII); retaliation under Title VII (Count IX); and retaliation under the ADA (Count X). All other claims

20

will proceed to trial.

An appropriate order will enter.

_____
WAVERLY D. CRENSHAW, JR.
CHIEF UNITED STATES DISTRICT JUDGE